We'll hear first from Mr. Springer. Good morning. Thank you, Your Honors, and may it please the Court, Brian Springer, on behalf of the federal government. The challenged eviction moratorium was vacated nationwide and is no longer in effect. The government has voluntarily dismissed all of its other appeals involving the eviction moratorium. How many cases were those? Your Honor, there were two other appeals that the government had taken, one in the D.C. Circuit and one in the Sixth Circuit. The government has voluntarily dismissed both of those appeals. And were those both granted? Yes, those were both granted, Your Honor. Were they opposed? Your Honor, they were not opposed. Okay. Okay, so I'm just a little confused about why we're here, why you all are disagreeing over this voluntary dismissal. I mean, I've read what's been said, but it's still kind of the core of it doesn't make sense to me. Can you explain it? Your Honor, I think I'm also a little confused why we're here. And I would just note that we are unaware of any case in which a court of appeals has denied the government's motion to voluntarily dismiss an appeal that the Solicitor General has determined not to pursue. Well, the Solicitor General doesn't tell the Article III court what to do. That argument is meaningless as far as I'm concerned. But I agree with Judge Haynes. The original reason that they opposed it was that the government said you were not planning that you would try to vacate the district court judgment and that you were not agreeing to attorneys' fees. Your Honor, at this point, as we informed the court last week, we no longer plan to ask the district court to vacate its judgment in this case. Of course, we reserve our right to oppose any fee request should plaintiffs file one, but Your Honor is correct that it does seem like... Well, based on what's happened since, that's based on whether you all had a subjective basis or whatever the standard is to have done what you did. That's correct, Your Honor. It's based on the separate inquiry under EJA whether the government had a substantial justification... Substantial. That's subjective. I knew that wasn't the right word. Substantial. That is exactly correct, Your Honor. And I think that's exactly right, is that that was the sticking point. And here, now that the government has conceded and has gotten the necessary authorization to say that it will not be asking the district court to vacate its decision in this case, there's no reason to continue litigating this case here. Well, I've looked at Rule 42B cases, and that kind of discretion or dismissal is within the discretion of the appeals court, right? Your Honor, there is discretion in these cases. I would note, as I mentioned before, that plaintiffs have not identified any case, and we are unaware of any case that involved the government. However, in any event... Well, one involved the NLRB in the Seventh Circuit. I think that's the government. Your Honor, there was a case that plaintiffs cited in their 28J letter involving mootness, but that was not a Rule 42B case. The two Rule 42B cases that the plaintiffs cited in their 28J letter from the Seventh Circuit, which obviously are not binding on this Court, are different in this case and involve private parties. They did not involve the government. Well, 42B doesn't have a government exception, so let's assume the government is bound by 42B. The principle of those other cases is that where dismissal is sought up protecturally simply because the government is fearful of the results on appeal is not a good reason. Your Honor, I find that claim a bit perplexing because here the government has acquiesced in a judgment against it in another case in the NLRB. Well, but your point... But the government's point... Well, no, you acquiesced in the case in the D.C. Circuit, which was solely based on the terms of the public health statute and which the Supreme Court had vacated the stay or granted... I forget which one it was, by a 5-4 margin, and basically rejected the government's position. So you did that. This is a case predicated on the constitutionality of Congress's ability even to craft a statute that would go to prevent evictions. So it's a different case. Your Honor, the plaintiffs here sought and obtained relief solely against the CDC's eviction moratorium. If plaintiffs are requesting a ruling about a hypothetical statute that Congress may pass at some point in the future, that would be an inappropriate advisory opinion to issue in this case. That's why I'm wondering, putting aside the 42B, why ain't this moved? I mean, while the opinion from the district court is quite lengthy and deep, deep within congressional constitutional rights, the actual judgment is about the eviction moratorium that the CDC entered. And so if we are looking at the judgment, that's the last CDC moratorium expired by its own terms on October 3, even putting aside the issue the Supreme Court's staying in. And so I'm just curious, like, what is left? The notion that Congress could pass something in the future, the notion that some other pandemic could come up, I mean, all of that seems to me to be sort of advisory. So I'm just trying to understand what's left. What could we decide? Your Honor, I think you're exactly correct. There is nothing left to decide here. The only thing that the district court addressed and that the plaintiffs sought relief against was the CDC's eviction moratorium. Well, the answer to mootness is that this administration seems to be extraordinarily creative and adroit at doing workarounds where there are unfavorable decisions. And one could conceive of some organization like HUD announcing an eviction moratorium on some sort of ground, you know, for the same ostensible purpose as the CDC moratorium was issued, just the same as the administration has announced but apparently not yet promulgated a vaccine mandate based on OSHA. Your Honor, I think the important point is that... And so my point is not that we would be granting an advisory opinion, no, but that there is a possibility, there is a realistic possibility that given the endurance of this variant and other variants, which the government... It's the whole point of the government's brief here, that one could foresee the strong possibility of more draconian measures. Your Honor, I don't think that possibility exists here,  to think that another agency would act. And again, I would emphasize that what the plaintiffs asked for here was relief against the CDC's eviction moratorium. But if another agency acted, wouldn't we have to address that at that time? Because what if it was based on federal funding of apartments? What if it was based on... I mean, there's all kinds of things that could be different than we have here. So I'm just trying to understand, like, what's left. And so you're not contesting the district court at this point. Y'all may go fight over attorneys' fees on this substantial issue, but that would be there anyway. I mean, let me come at it another way. Could we reverse and say the CDC did have the authority? We would be in violation of the Supreme Court, right? That's correct, Your Honor. We don't think that the court could act here because this case is moot. And as Your Honor notes, any future action that an agency takes or that Congress takes would need to be analyzed on its own terms in light of the contemporaneous factual facts on the ground at that time. And here there's no reason to speculate about what action an agency or a Congress may take. I mean, Judge Haines's point is a very good one, but at the same time the main point that the district court ruled on was the constitutionality of considering evictions as part of interstate commerce or the right to pursue eviction in state court as an economic activity that substantially affects commerce. So that applies irrespective of the statute, does it not? It may be right, it may be wrong, but that principle is beyond the individual statute. Your Honor, that principle may apply regardless of the statute, but the principle has to be decided within a case for which there's a live dispute. And again here, the challenged eviction moratorium, which is the CDC's eviction moratorium, which is the only thing that plaintiffs sought and obtained relief against, has been vacated nationwide on antecedent statutory grounds. And the district court did not issue a judgment that says Congress is hereby barred from entering into statutes that preclude evictions or delay evictions. Certainly that's discussed at length in the opinion, but when you look at the judgment, it's not there. So even if that's an issue that's still floating around, is that what's before us if we were to affirm or reverse the judgment? Your Honor, it's not before you. The district court didn't grant relief on that basis and plaintiffs didn't request relief on that basis. And the Supreme Court has suggested to the contrary in the Alabama Realtors case, right? Yes. The Supreme Court's decision was at least premised on the idea that Congress probably could authorize an eviction moratorium, but that it hasn't done so at this point. Your Honors, if there are no further questions. Let me just pursue the 42B one step further. So basically you're saying that voluntary dismissal is voluntary dismissal and what's your best case why we should exercise our discretion? Is that the circumstances of this case? Your Honor, I think that the case that plaintiffs cite in their opposition to our motion to voluntary dismiss, that's this Court's case from 2013, specifically recognizes that these motions are generally granted. And that presumption in favor of dismissal makes sense because once one party is ready to throw in the towel, there's an Article III problem with proceeding to address the merits, despite the fact that there's no longer an adversarial presentation. In that case, the Court denied the motion for voluntary dismissal, but it presented a very different circumstance than what we have here because there there were multiple appellants and only one co-appellant sought to dismiss the appeal and the other co-appellant wanted to continue the case. So there there was no Article III problem with continuing to litigate the issues. What standard would you think we should apply on discretion of 42? I mean, if you were writing the opinion on what is the standard for discretion, what would you argue? And I'll ask your opponent that, so don't think I'm only relying on yours. Your Honor, I think that the Court would want to recognize the Article III problems with moving forward when one party has decided to no longer pursue an appeal. And as I mentioned earlier, I think that those concerns are particularly heightened in a case involving the government because the Solicitor General has authority, has statutory authority that's been delegated to him to make decisions about what cases the United States will and will not pursue. Well, you all didn't have to appeal this in the first place is kind of your point. Yes, that's correct, Your Honor. They couldn't have appealed it because they won. That's exactly right, Your Honor. And at this point, we are willing to dismiss our appeal and leave the district court's judgment in place. Of course, if the Supreme Court had denied a stay, you would have persisted in this appeal. Your Honor, I'm not sure where we would be if that had happened. Oh, give me a break. Likely we would continue to press the point here. But it would be new, right, unless the CDC extended it. If the CDC let it end on October 3 and said we're done. No, well, then had that been the case, I would have fought tooth and nail to maintain this appeal because that would have been a transparent manipulation of the process to prevent adjudication, which is one of the well-settled grounds for not dismissing. Well, regardless of what would have happened, here a court has ordered that the CDC could not continue to impose an eviction moratorium without explicit congressional authorization. If there are no further questions, Your Honor, I would like to reserve the remainder of my time for rebuttal. I guess not. Thank you, sir. Thank you. Good morning, Your Honors. Good morning. My name is Robert Henneke with the Texas Public Policy Foundation here on behalf of the affilees. To start with, to your question, Judge Haynes, the relief granted was in this case against the United States of America, not the CDC, and the declaratory judgment was against the federal government's eviction moratorium policy. The district court correctly held the federal eviction moratorium. The eviction moratorium that you all pursued, at the time that you filed your case, there was only a CDC one. At the time that the judge entered the opinion, there was only a CDC. And that is what you claim in your complaint. It's the CDC eviction moratorium. And so I don't understand how that, while I understand that the opinion goes off on long discussion about Congress, I don't see how this judgment alone could prevent Congress from entering some kind of statute on the subject. In two ways. One, the defendant in this case was not just the CDC and HHS, but also the United States of America. And the challenge that we brought was a challenge against the federal government exercising an eviction moratorium, which in this case it did so through the CDC order. But the declaratory judgment in this case was complete against the entire United States, and it addressed – It just talks about the eviction moratorium. It does not say Congress is hereby barred from entering statutes on evictions. As I said, I understand the opinion is lengthy on that. But we could, if we didn't have – Let's say the Alabama Realtors case never happened. We could have affirmed this on statutory grounds if we wanted to. We could construe the CDC as not having that authority based on the same thing the Alabama Realtors did and be done. And, in fact, if we can do that, we're supposed to do that. We're not supposed to decide constitutional issues if the same party can prevail on statutory grounds. Respectfully, Your Honor, I would disagree because in this case there was not the statutory question presented, and Judge Barker in this court would only be able to address the claims before it. The only claim that we brought in this case was the constitutional challenge under the Commerce Clause to the federal government's eviction moratorium policy through the CDC order. And this case is not moved because the federal government continues to maintain its policy that it has power under the Commerce Clause to prohibit residential evictions. So let's suppose, hypothetically, that the eviction moratorium had never been imposed but that there was all kinds of noise out of Washington that probably it would be a good idea and the public would like it. I assume you would not claim that you could have come into federal court and sought a declaratory judgment on the mere possibility or even likelihood or almost certainty that the moratorium would be imposed if it never was. I think in that question, Judge Smith, that would have been a question of ripeness, not mootness, because then the question would have been whether there was final agency action that would have triggered an injury onto the clients. But I guess the follow-up to my question is, isn't that the situation that we're back to now that the moratorium has been lifted and the government has dismissed the other appeals with no pronouncement about any kind of future action? Why are we not back to where we would have been under my hypothetical? We're here in the same situation. It's analogous to what was presented in Aladdin's Castle and the Freedom from Religion Foundation from the Fifth Circuit of last year because very clearly they did implement an eviction moratorium and it very clearly remains the ongoing policy of the United States that the impact of COVID-19 on the economy justifies unprecedented intrusions on areas that have been traditionally left to state regulation. There's nothing preventing the defendants... Like a vaccine mandate, for instance. Another example of that, one that we haven't seen yet, but under the same premise, but here specifically we have the United States policy in terms of imposition of an eviction moratorium, and there's nothing preventing the defendants from reimposing a new moratoria as soon as all the pending cases are dismissed. Well, the CDC can't, given the Supreme Court's decision. And let's talk about the elephant in the room. The Supreme Court made pretty clear Congress can. Now, they didn't rule on every possible statute, but as Judge Smith pointed out, we don't know what that would look like. Would that be based on federal funding of certain apartments? Would it be based on apartments that serve Medicare patients or Medicaid patients? Would it be based on, I don't know, any number of things that might alter our analysis? Why would we be issuing an advisory opinion on every possible statute Congress could ever put out there, particularly in light of the Supreme Court saying, Congress has got to do this, which sure sounds like Congress has the power to at least do something. Well, in this instance, we're not asking for an advisory opinion because the case is not moved because of the ongoing policy of the federal government, which has never been withdrawn. Now, sure, the Supreme Court in the Alabama Association case mentioned that in some situations, Congress may be able to enact an eviction moratorium if it was tied to their enumerated powers under Article I, Section 8. A couple of examples were mentioned in Judge Barker's opinion at the district court. For example, when Congress imposed a moratorium pursuant to its wartime powers in terms of evicting troops or potentially, if you looked at last year, the original CARES Act appropriations, which had, through the spending power, a moratorium that was tied to properties that had federal mortgages were federally regulated. But the Supreme Court did not say that in all cases, in all instances, Congress had the power to do that because it does not. Well, your case only pertains to the Commerce Clause. Yes, ma'am. And so the dicta from the Supreme Court in the Alabama Association case was not specific and certainly encompassed a number of other hypotheticals that aren't before the court here. Let me just ask you this. Can your client today evict people who would otherwise be evicted had there never been a pandemic? You know, they haven't paid, et cetera, et cetera. Can that eviction go forward today? They can. They prevailed. We're the appellees. We won at the district court with the... No, I'm saying throw this case out the window. There never was this case. Today, your client has a lessee who hasn't paid, et cetera, et cetera, meets all the standards for eviction. Can that client go and get an eviction and put this person out on the street? Yes, but respectfully, Judge Haynes, the standard for appellate standing is that that I look at in Camerota v. Green, where the reason the government had the basis to appeal the declaratory judgment against it is because that declaratory judgment injures the government in terms of its ability to take actions in the future. That injury still exists. The government has appealed this case. The government had jurisdiction to appeal this case. And now wants to dismiss it because it's moot. Because it doesn't have... The CDC does not have this ability, and we don't know what Congress would do and what that would look like and what it would be tied to. So the notion that we're going to rule on Congress can never do this when the Supreme Court made clear that, yes, it can at least sometimes, and we don't even know what Congress might do or not do. The fact that the government wants to keep saying we have power but not exercise it, I just don't get that. I don't get why we would be ruling on that. Three points, Your Honor. One, to finish my answer to your question, our clients have standing to defend the declaratory judgment because it protects them from enforcement of the federal government's eviction moratorium policy. Consider the cases in Aladdin's Castle. At the time that the case was considered by the Supreme Court, the provision of the ordinance that was at issue in the case had been repealed. It had been repealed by the city, and in that case the court found and the city had appealed a declaratory judgment against it. In the interim, that provision got repealed, and the Supreme Court found that it had jurisdiction because otherwise nothing prevented the city from reenacting the same provision. But here's something that does prevent the CDC. That is the Supreme Court's ruling. So it would take Congress doing something, and we don't even know what that something is, so we would have to rule on some unknown something and say Congress can't do squat. Your Honor, there's four reasons why the Alabama Association case does not void this court's jurisdiction. Number one, our clients are not party to that case, nor are they able to enforce its terms. Number two, it is an out-of-circuit district court opinion that's not binding or precedent in the Fifth Circuit. Three, Judge Jones, as you pointed out, this case is broader in scope on the constitutional issue and broader in application against the entire federal government through the United States of America. Alabama only brought the statutory interpretation question against HHS and CDC. And fourth, this case is not disturbed by the Alabama Association case because the Terkel declaratory judgment and order setting aside the CDC eviction order, it came first. It predated the Alabama Association case. And in terms to the difference between the government's motion, the government's motion under 42B does not trigger jurisdiction. The statute, the text of Federal Rule of Appellate Procedure 42B, says that it is a discretionary action with the court. It is a may. And I believe that it was your question, Judge Jones, to the government's attorney as far as what the standard is that should be applied. And the NOAA text case tells us that that standard is in the interest of justice. But the Fifth Circuit has also said that this court looks with a jaundiced eye at pretextual dismissal efforts that are aimed at avoiding appellate review, and that's exactly what we have here. The government, the court should... But this one was the result of a Supreme Court decision. It wasn't just one day they thought, oh, my heck, we don't want to go to the Fifth Circuit, they might rule against us, so we'll dismiss the appeal. That isn't what happened. There was a Supreme Court decision that prompted this that's quite helpful for you. Well, it's a stay. It's a Supreme Court interim stay, which is not a final ruling, right? That's correct, Your Honor. And also it was just on the statutory interpretation question presented in terms of the motion to vacate the stay. Judge Haynes looked, for example, at the Fifth Circuit's Freedom from Religion Foundation case from last year. In that instance, the government appealed an adverse declaratory judgment against it without there being an injunction. By the time of the appeal, the event that was at issue had ended. A later Supreme Court opinion confirmed that Texas could not do what it had done, and at oral argument, Texas repeatedly promised to the court that it would never do that action again. And in that situation last year, in April of last year, the Fifth Circuit was satisfied and found that it had jurisdiction. But that was because Governor Abbott had said the opposite. And so they said, well, the attorney's trying to be accurate but is not accurate. But here you keep talking about this policy, but you're not pointing to the CDC hasn't issued another moratorium. They can't. Congress is still, you know, they're not passing anything. So let me back up to this question. At the present time, if we dismiss this appeal, the government would be bound by the district court opinion. So your clients are fine. Now, your concern is that they might come in and try to do something else in the future. But, again, we have no idea what that is. So I guess I'm not understanding why we don't dismiss the appeal. You win. You've got a binding judgment against them for your clients. Maybe that doesn't help somebody in Ohio, but that's not what you're here for. The policy of the United States carries forward as reflected in the government's briefs in this case. The government has never withdrawn its policy in terms of a federal eviction moratorium. Where can I find this policy that's applicable right now? As far as the policy of the federal government that it has... I'm not talking about Congress thinking they have the power. I'm talking about the CDC thinking it. Well, more than the CDC. I mean, you could look at the president's executive order from the first day of office when he ordered the implementation of a federal eviction moratorium. You can look at the government's briefing in this case. You can look at the policies that were adopted in the various versions of the CDC order, which had never been withdrawn. And that's the point, is that the position of the federal government in terms of its eviction moratorium... Sure, they lost the Alabama Association case. Texas lost the Freedom from Religion case. Mesquite lost the Aladdin's Castle case. But the policies of those governments were never withdrawn, and that was sufficient for the court... Does the CDC moratorium... Can I find it on its website still? I mean, if you look at the briefing in this case, isn't it fair to say that the government's argument over and over and over again about the Commerce Clause is based on the fact that this is an extraordinary pandemic, it's an extraordinary situation, it requires extraordinary actions on the part of the government, and everything is extraordinary, and therefore everything that you can conceivably think of  has got to be mobilized to combat the pandemic. And that seems to me an overarching implication of the government's policy. Your Honor, may I make two points in closing? Sure. One is that they do use COVID as the excuse to implement the eviction moratorium, but as the government conceded during oral argument, their power to do an eviction moratorium is not limited by COVID, and they conceded that they could do so for any reason, including for fairness. So it's even broader than that. And the second point is, as far as the question on a case to look at for declining to grant the 42B motion to dismiss, I would point this court to the sister court's opinion in the Americana Art case, where the Seventh Circuit denied an opposed dismissal motion where it cited to the fact that the issues in the case were significant and provided an opportunity to provide additional guidance to the district courts. There is jurisdiction here ongoing because of the government's policy. We request the court deny the government's dismissal motion and affirm the district court's final judgment. One follow-up question for you. I assume that you're pleased that the government, at least today, has, I think in writing, has stated that it, to use its words, no longer plans to ask the district court to vacate. Let's assume for purposes of my discussion that that's a binding promise on the government. I certainly think they would be more than negligent as officers of the court if they went back on that at a later time. Let's assume, in other words, that it's not going to be vacated and they're not going to request that it be vacated. Assuming that, does that have any legal effect one way or the other on your client? It seems to me that it's to your client's benefit that that district court opinion is there and it's binding on the parties to the litigation, meaning your client and the various federal entities that are defendants. So it's true, Your Honor, that if this court exercises its discretion under 42B to dismiss this case and under 42B imposes terms of the dismissal that would bind the federal government in terms of its promises because their position during this federal eviction moratorium has not been consistent and has not been, I would say, frank with the various courts. But if this court were to exercise its discretion to grant the dismissal motion under those terms, then yes, what would remain would be the trial court's declaratory judgment through its final judgment that would be binding at the district court level. But I would also, two things, in closing Judge Smith in terms of deciding whether to exercise that discretion, not jurisdiction, but that discretion or not, is that the court has looked at disfavor reasons for dismissal that were strategic, and another case has been that a basis to deny dismissal or part of that basis has been the need to give guidance to the district courts underneath the circuit court and given the ongoing nature of the government's policy that would certainly be a reason for this court to keep this case and resolve the merits. All right. Thank you, sir. Ms. Pettit. Thank you, Your Honors. Thank you, Judge Jones, and may it please the Court. We were granted leave to participate in this argument before the procedural issues that you have discussed today arose, and we would love to discuss the issues that I was planning to do because we really do believe that the federal government is ignoring the Supreme Court's repeated warning stated most recently in NFIB against Sebelius that the Commerce Clause cannot be read to obliterate the distinction between what is national and what is local. But I've heard your questions, and I'm going to combine my comments instead to simply addressing the hypothetical that Judge Smith raised about what is the difference between what happened here and if they had never raised the moratorium to begin with. And the difference is the distinction between ripeness and moodness that my co-counsel or counsel for the party raised. And the distinction that's important for this purpose is who bears the burden of proof. In the instance of ripeness, the burden of proof raises on the plaintiffs. But as this Court recognized in FFRF against Abbott, when the claim is that the issue has become moot on the appeal, the burden switches, and in this case would be on the United States. And in FFRF against Abbott, as my friend was just describing, that the burden is a heavy one, that they will not return to their previous actions. And I would respectfully suggest that their conduct in this Court does not suggest that they've met that burden. We have not even heard them say that they will not seek to impose the moratorium through some other means because, as Judge Jones pointed out, the Alabama realtors' decision is not on the merits. It's simply a stay, and the only thing that is preventing them from... Well, it may be simple, but the reality is it's the United States Supreme Court, and we pay attention to every word they say, and their words were pretty darn clear. So the reality is we don't know what the future holds. None of us do. We don't know if Congress is going to pass something. We don't know what it would be based on. And the CDC cannot currently give any moratorium. So I'm just struggling to see how this... And I realize you represent Texas, and I respect that. How does this interfere with Texas? Your Honor, we don't take a particular position on that. I just was pointing out for the purposes of the discussion that we were having. I also would point this Court to Del Monte Fresh Produce against the United States, which was a case out of the D.C. Circuit, which is 570 F. 3rd 316, which discusses how to address mootness in the particular context that I think is really useful here, namely a declaratory judgment act where there has been a change, a consistent policy, but a mooting out of a particular instance of that policy, which might be helpful for the Court. But in response to your question, Judge Haynes, we don't take a position about what Congress will or will not do because we can't know that. And so we respectfully think that the District Court got the case right on the merits, and we would request that you affirm it. But I understand the problems with your jurisdiction, and unless the Court has any other questions, I'm going to sit down. Okay. Thank you very much. Mr. Springer, rebuttal. Thank you, Your Honors. I'd just like to make one point. Since the Supreme Court's decision in Alabama Association of Realtors and the government's dismissal of its appeal in that case, the government has taken the consistent position that the CDC cannot reimpose the eviction moratorium without explicit congressional authorization. If I went to the CDC website today, would I find a moratorium on evictions or a policy that they can and will be doing them? No, Your Honor. And, in fact, they've removed it. Yes, I believe they have, Your Honor. But Mr. Heneke says that the government implied that I misunderstood here. Let me find it. That the eviction moratorium or the power to impose an eviction moratorium is not limited to COVID. Is that accurate under the Commerce Clause? Your Honor, Congress would have the authority to do that, and, indeed, the modern Supreme Court has not invalidated an economic regulation since the 1930s. It really isn't like the 19... All right, well, maybe. But here, the Court need not reach that question. Right? Well, NFIB, I'd say, was economic. Your Honor, I think the important point is that we don't know what Congress will do, if Congress will act, and, if so, what the action will look like. Well, but as I posited at the beginning, and Judge Haynes has stated some real interesting hypotheticals as well, one can posit other agencies of the government trying to impose a similar moratorium just as OSHA came up with a vaccine mandate, very creatively, if there's ever going to be a regulation about that. So the point is, the government here, in its briefing, does not disavow that the sole issue about residential evictions is not economic activity within the Commerce Clause. Well, Your Honor, the government stands by what it says in its brief, but, again, these are all hypothetical questions about whether an agency or a Congress will act, and until those questions arise on the particular facts, there's no reason to address them here. Well, it's hard to understand how the facts could be any different when the principle is no residential evictions. I mean, this was about as clean cut as you could get, because the CDC said rent continues to accrue, which ought to take the sting out of a claim that it was the ordinary transactional type of e-commerce that was going on. This was only going to the ability to file evictions, and that was the premise that the government argues here. But, Your Honor, I would return to the fact that the plaintiffs sought and received relief against the CDC's eviction moratorium, and that eviction moratorium is now defunct and cannot be reimposed by the CDC without explicit congressional authorization. Okay, one more question, then. As a consequence of if we leave the finality of the district court in place, then you have the AAR district court opinion, you have Turkle, which upheld the moratorium in the district court, and that was voluntarily dismissed at the instance of the plaintiffs, right? No, that's Chambliss. Chambliss, excuse me, Chambliss, yes. And then you have this case, which went the other way. So suppose HUD comes along with some other premise for eviction moratorium based on the Commerce Clause. What would the government's position be then? Your Honor, I can't speculate about what the government's position would be because it would depend how HUD created an eviction moratorium, what its authority was to do that, and how the eviction moratorium was structured. Okay, let me be a little more careful then. In immigration cases, the government routinely says that an immigration decision by one court of appeals is not binding on the government when it handles immigration appeals in other courts of appeals, right? I'm informing you of that if you don't know that. The IRS takes the same position. A tax decision in one circuit court does not bind the IRS in going after taxpayers in other circuits. What is the difference between what the district court did here and that situation? Your Honor, I see I'm out of time. Please answer, sure. Here, the district court ruled with respect to the CDC's eviction moratorium specifically, and its judgment was limited to that because that's all the relief that the plaintiffs had asked for in this case. But why wouldn't the government take the position? Say CDC, you say that the D.C. court issued a nationwide moratorium. Could the government take the position  as long as it doesn't apply within the Ninth Circuit? Your Honor, whether or not the... Yes or no? The answer, I just want to say whether or not the government could in another case. Here, the government has made clear that it understands that that is a nationwide binding judgment that makes it so that the CDC cannot. That's because you want to dismiss this case. That's what I'm saying. But otherwise, would the D.C. court decision bind, does it bind the government in every circuit? Your Honor, I'm not sure that I can speak to the question of what the scope of relief would be in that particular... I think there's a difference between a national injunction, which you don't actually have here, you have a declaratory judgment, a national injunction, a nationwide injunction, and precedent. So if we are to say that this is not a particular social group and the Seventh Circuit says it is a particular social group, then the government's going to follow in the Fifth Circuit what the Fifth Circuit says and the Seventh Circuit what the Seventh Circuit says. That's different from a national injunctive relief. And there's debate about whether there should be national injunctive relief in district courts and blah-biddy-blah, but you're bound by that. But that, as you say, the judgment here is on an eviction moratorium that doesn't exist anymore. That's exactly right, Your Honor. The relief that may be granted in another case could be binding, but that's different than precedent. And here the eviction moratorium is no longer in place. Okay. Well, thank you very much. We have the argument, and we will be in recess until 9 o'clock tomorrow morning.